UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT STOCK and MARTIN RIFKIN,
on behalf of themselves and all other employees
and former employees similarly situated,

            Plaintiffs,

     v.

XEROX CORPORATION,

            Defendant.
_____

**DECISION AND ORDER**

6:16-cv-06256 EAW

## BACKGROUND

Named plaintiffs Robert Stock ("Stock") and Martin Rifkin ("Rifkin") (collectively "Named Plaintiffs") commenced the instant action on October 28, 2015, in the United States District Court for the Central District of California. (Dkt. 1). The complaint alleges that Named Plaintiffs are former (in the case of Stock) and current (in the case of Rifkin) employees of defendant Xerox Corporation ("Xerox" or "Defendant"), and that, among other things, they "frequently worked more than 40 hours in a week and were not compensated at a rate of one-and-a-half times their regular rate as required by the FLSA and applicable state laws." (*Id*. at ¶ 26). By Order entered April 13, 2016, the matter was transferred to this District on Xerox's motion. (Dkt. 37).

The Court referred the matter to United States Magistrate Judge Marian W. Payson for supervision of all pre-trial matters except dispositive motions. (Dkt. 39). On October 31, 2016, Judge Payson approved the stipulation of the parties conditionally certifying the

matter as a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Dkt. 47). The collective action is defined to include:

> Current and former employees of Xerox who, from October 12, 2013 to October 12, 2016, performed any work for Xerox as Field Engineers and/or Remote Support Engineers as identified in the Reply Affidavit of Karen LaGraff filed on March 24, 2016 in further support of Xerox's Motion to Transfer Venue (*see* Docket No. 35-2), subject to the applicable statute of limitations, who were treated as salaried exempt, and who give consent to file a claim in this action for overtime compensation that is allegedly due to them for time worked in excess of forty hours per week (hereinafter referred to as the "Collective Action Members").

(*Id.* at 1). In addition to Named Plaintiffs, 31 individuals opted-in to participation in this lawsuit. (*See* Dkt. 86). *See Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010) ("Unlike in traditional 'class actions' maintainable pursuant to Federal Rule of Civil Procedure 23, plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment.").[1] However, two of those individuals (Ellis J. Canal and Maurice G. Abrams) refused to participate in the discovery process and requested to be removed from the lawsuit, and the parties seek their dismissal with prejudice. (Dkt. 86). The 29 remaining individuals will be referred to herein as the "Opt-In Plaintiffs", and together with the Named Plaintiffs, will be referred to as "Plaintiffs".

---

[1] As noted in the Unopposed Motion to Withdraw Duplicate Consents and Dismiss Non-Participant Opt-Ins, there are 33 separate consent forms that were filed, including duplicate forms from Marvin Abraham and Samuel Sharples. (Dkt. 86). The Court grants the motion to withdraw the duplicate Consent to Become Party Plaintiff of (1) Marvin Abraham filed on July 11, 2017, at docket 52-1, and (2) Samuel Sharples filed on August 29, 2017, at docket 58-4.

On October 21, 2020, Named Plaintiffs filed a motion for approval of a settlement agreement reached by the parties. (Dkt. 81). The Court held a motion hearing on November 24, 2020 (Dkt. 83), and requested further information that was submitted by the Named Plaintiffs on December 18, 2020 (Dkt. 84), which includes a sworn declaration of J. Derek Braziel, Esq., that each of the Opt-In Plaintiffs has consented, in writing, to the settlement. (Dkt. 84-1 at ¶ 15). In addition, by Text Order entered December 22, 2020, the Court requested further information from Plaintiffs' counsel (Dkt. 85), and that information was provided on or about January 4, 2021 (Dkt. 86; Dkt. 87).

The Court has reviewed the negotiated Collective Action Settlement Agreement and Release (Dkt. 81-1) (the "Settlement Agreement"), and approves it for the reasons set forth below, except with respect to the attorneys' fees, costs and expenses which are awarded in the total amount of $437,500.00.

## DISCUSSION

This Settlement Agreement does not impact the rights of any non-parties, and the Court need not consider whether the requirements to maintain a class action are satisfied. *See Scott v. Chipotle Mexican Grill*, Inc., 954 F.3d 502, 520 (2d Cir. 2020) ("[T]he requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under § 216(b)."); *Surdu v. Madison Glob., LLC*, No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) ("[S]ettlement of a collective action does not implicate the same due process concerns as the settlement of a class action because, unlike in Rule 23 class actions, the failure to opt in to an FLSA collective action does not prevent a plaintiff

from bringing suit at a later date."). Instead, as an initial matter, the Court must satisfy itself that Opt-In Plaintiffs are "similarly situated" to Named Plaintiffs before it can finally determine that a collective action is appropriate. *See Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 277 (E.D.N.Y. 2020) ("The Court can conclude that the opt-in plaintiffs are in fact similarly situated, either following motion practice by the parties or through its review of a proposed settlement agreement[.]").

Further, "an employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement," and in the latter case, "before a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Such analysis is frequently referred to as a *Cheeks* analysis, in reference to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). In performing the *Cheeks* analysis, the Court considers the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky,* 900 F. Supp. 2d at 335 (quotation omitted). "There is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Cabrera v. CBS Corp*.,

- 4 -

No. 17-CV-6011 (CM) (BCM), 2019 WL 502131, at *5 (S.D.N.Y. Feb. 8, 2019) (quotation and citation omitted).

The Court initially notes that, based on the record before it, it is satisfied that the Named Plaintiffs and Opt-In Plaintiffs are "similarly situated" such that final certification of the collective action is warranted. *See Scott*, 954 F.3d at 516 ("to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation.").

With respect to the terms of the Settlement Agreement, the Court notes that "the named plaintiff and his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff—as a party to the case—is required." *Marichal*, 432 F. Supp. 3d at 279. Courts often satisfy this requirement by using "a two-tiered procedure: first, the parties file a motion for preliminary approval of the settlement and request approval of a notice. . . . As a second step, the parties file a motion for final approval, and the Court conducts a final fairness hearing, giving all opt-in plaintiffs the opportunity to be heard by the Court." *Id.* at 280. However, such a two-step procedure is not necessary in every case; for example, it is not required where each opt-in plaintiff has assented to the terms of the proposed settlement. *See id.* at 282 n.4.

In this case, all of the Opt-In Plaintiffs, when signing the consent to opt-in to the litigation, authorized the Named Plaintiffs to make decisions on their behalves, including with respect to any settlement of the lawsuit. (Dkt. 7; Dkt. 14; Dkt. 25; Dkt. 52; Dkt. 53; Dkt. 54; Dkt. 55; Dkt. 56; Dkt. 57; Dkt. 58; Dkt. 59; Dkt. 60). In addition, based on the Court's request at the motion hearing, Mr. Braziel has represented in a sworn declaration

that each of the Opt-In Plaintiffs has been contacted about the settlement and consented, in writing, to the settlement. (Dkt. 84-1 at ¶ 15). Further, the Settlement Agreement provides that Opt-In Plaintiffs release their claims against Defendant by signing a release form and associated tax documents. (Dkt. 81-1 at ¶ 7(c)). On the specific facts of this case, the Court finds this procedural mechanism sufficient to ensure that the Opt-In Plaintiffs have consented to the terms of the Settlement Agreement. *See, e.g., Ramirez v. Soc. 8th Ave Corp.*, No. 18-CV-2061 (OTW), 2019 WL 1382711, at *1 (S.D.N.Y. Mar. 26, 2019) (approving settlement of FLSA collective action in single-step process); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *3 (S.D.N.Y. Nov. 6, 2015) ("Since *Cheeks* was decided, courts have taken a number of approaches to the approval of wage-and-hour settlements. For example, many judges in this District now require the parties (to the extent they are seeking to dismiss the action with prejudice) to file a joint letter-motion requesting approval of the settlement agreement (or alternatively provide documentation of DOL approval) on the public docket and explaining why the proposed settlement is fair and reasonable. Once such letter-motions are filed, the court then evaluates the settlement, and assuming it concludes it is fair and reasonable, approves the settlement in a docketed order without holding a formal hearing.").

With respect to the required *Cheeks* analysis, the Court finds the Settlement Agreement fair and reasonable. As to the first factor, the total settlement amount in this matter is $1,250,000.00, which is greater than half of Plaintiffs' initial computations. (Dkt. 81 at 3). Considered in the context of the time and expense associated with continuing to litigate this matter and the defenses asserted by Defendant, the Court finds the proposed

settlement amount acceptable.  *See, e.g., Lara v. Air Sea Land Shipping & Moving Inc.*, No. 19-CV-8486 (PGG) (BCM), 2019 WL 6117588, at *2 (S.D.N.Y. Nov. 18, 2019) (approving settlement of FLSA overtime claim for approximately 30% of potential recovery where "damages would be vigorously contested, making a compromise figure appropriate for settlement").  The Court notes that each Plaintiff will receive a meaningful payment, of not less than $1,000.  (*See* Dkt. 81 at 3); *cf. Cabrera*, 2019 WL 502131, at *5 (rejecting proposed settlement where the plaintiffs "would receive no settlement payment at all").  There is also no reversion to Defendant—in other words, in the event any Plaintiff opts not to claim his or her share of the settlement amount, the unclaimed funds will be sent to the State's Unclaimed Property Fund.  (*See* Dkt. 81 at 3).

As to the second and third factors, based on the record before the Court, it appears that the costs and risks to Plaintiffs of continuing with this litigation are very real.  Furthermore, turning to the fourth and fifth factors, the Settlement Agreement was negotiated at arm's-length by experienced counsel, with involvement by a third-party mediator.[2]  There are no indicia of fraud or collusion.

The Settlement Agreement also does not include certain types of provisions that courts have found problematic in the FLSA context.  Although it does include some language concerning confidentiality, the Court is satisfied based upon the representations by counsel at the appearance on November 24, 2020, that the provision is not overly broad

---

[2] As noted in the Settlement Agreement, the mediation did not result in a resolution, and it was only after additional discovery that the parties were able to resolve the case. (Dkt. 81-1 at 2).

and that the limited language serves a useful purpose, particularly where the terms of the agreement are publicly filed on the docket. *See, e.g., Lara*, 2019 WL 6117588, at *3 ("As this Court and other courts have frequently explained . . . confidentiality clauses are contrary to public policy and the remedial purposes of the FLSA because they prevent the spread of information about FLSA actions to other workers who could then use that information to vindicate their own statutory rights[.]" (quotations and original alterations omitted)).

The Court also is satisfied, based in part on the submission of additional information from Plaintiffs (Dkt. 84 at 4-5), that the service awards of $20,000 to Rifkin and $10,000 to Stock, representing collectively less than 2.5% of the total settlement amount, are fair and reasonable. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-88 (W.D.N.Y. 2005) (approving enhancement award to class representative totaling 8.4% of the total settlement fund); *Chambery v. Tuxedo Junction Inc.*, No. 12-CV-06539 EAW, 2014 WL 3725157, at *11 (W.D.N.Y. July 25, 2014) (approving enhancement awards totaling roughly 5% of the total settlement fund).

The Settlement Agreement anticipates the use of a claims administrator to administer payment of the settlement funds, with an anticipated cost of $8,620. (Dkt. 84 at 3; Dkt. 81-1 at ¶ 5). The Court finds that it is appropriate to retain a claims administrator and the proposed costs are reasonable. *See, e.g., Chang v. Philips Bryant Park LLC,* No. 17 Civ. 8816 (LTS) (SLC), 2019 WL 8105999, at *4 (S.D.N.Y. Oct. 23, 2019) (approving settlement agreement with provision for up to $30,000 in fees for claims administrator), *adopted*, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020); *Flores v. Mamma Lombardi's of*

*Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) ("Courts within this district have awarded up to $50,000 for the settlement claims administrator.").

Finally, the Court considers Plaintiffs' request for attorneys' fees in the amount of 35% of the total settlement amount and less than the agreed-upon 40% contingency fee in the fee agreement. In accordance with *Cheeks*, the Court reviews a request for attorneys' fees to ensure that it is reasonable. *See Hernandez v. Boucherie LLC*, No. 18-CV-7887 (VEC), 2019 WL 3765750, at *3 (S.D.N.Y. Aug. 8, 2019). "In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Plaintiffs' submissions are inconsistent as to the amount of attorneys' fees requested. In their initial motion for approval of the Settlement Agreement, counsel stated that they are seeking attorneys' fees in the amount of $437,500.00 (Dkt. 81 at 7); however, the supplemental submissions indicate that they are seeking fees in the amount of $457,500.00 (Dkt. 84 at 4; Dkt. 87 at 2), and the Settlement Agreement itself contemplates an award of $457,500.00 for fees, costs, and expenses (Dkt. 81-1 at 12). At different points in their submissions, Plaintiffs state that both the $437,500.00 figure and the $457,500.00 figure represent 35% of the total settlement amount. (*See* Dkt. 81 at 7; Dkt. 84 at 4).[3] Of course, 35% of the $1,250,000.00 settlement amount is $437,500.00—not $457,500.00.

---

[3] Although not explained in Plaintiffs' papers, this discrepancy may be due to the fact that, according to Mr. Braziel, the Settlement Agreement does not separately delineate fees

- 9 -

The error in Plaintiffs' submissions with respect to the amount of fees and expenses is unfortunately not isolated.  Plaintiffs' initial submissions contained errors and lacked critical information, including a full breakdown of payment of the settlement funds, as well as confirmation that all Plaintiffs had consented to the Settlement Agreement.  Because this initial filing was deficient, the Court required Plaintiffs to make a supplemental submission—but that submission again contained errors and apparent discrepancies— necessitating the Court to request that Plaintiffs submit additional supplemental submissions in an attempt to correct those errors.  (Dkt. 84; Dkt. 85; Dkt. 86; Dkt. 87).  Plaintiffs' counsel's failure to pay appropriate attention to the details of their submissions and exercise appropriate care in performing basic proofreading functions, has caused the Court to expend valuable time and resources.

The Court notes that a fee award of even $437,500.00, while less than the agreed-upon 40% contingency amount, is higher than the lodestar figure.  The Court further notes that while the actual hours expended by Plaintiffs' counsel appear reasonable, the hourly rates utilized by Plaintiffs' counsel in calculating the lodestar amount are higher than what would typically be approved in this District.  (*See* Dkt. 81 at 7; Dkt. 84 at 3; Dkt. 87 at 2).  Based on the record before the Court, including the supplemental submissions (which includes detailed time records that have been submitted *ex parte*), the Court concludes that

---

and costs, and when inputting the final amount into the Settlement Agreement, he added $20,000 for costs based on his review of his records at the time. (Dkt. 84-1 at 7).  Mr. Braziel states that the final amount of costs and litigation expenses totals $20,213.44, but they are not seeking those expenses exceeding $20,000. (*Id*. at 7-8).  Nonetheless, this is not explained with any sufficiency in the motion papers.

$437,500.00 is a reasonable amount for fees and expenses, and to the extent Plaintiffs' counsel sought a higher amount, the Court denies that request.

## **CONCLUSION**

For the reasons set forth above, the Court hereby grants the Unopposed Motion to Withdraw Duplicate Consents and Dismiss Non-Participant Opt-Ins (Dkt. 86) and orders the withdrawal of the duplicate Consent to Become Party Plaintiff of Marvin Abraham (filed on July 11, 2017, at Dkt. 52-1) and Samuel Sharples (filed on August 29, 2017, at Dkt. 58-4), and further orders that Ellis J. Canal and Maurice G. Abrams be dismissed as plaintiffs in this action with prejudice; and the Court further grants the motions for approval of the Settlement Agreement (Dkt. 81; Dkt. 84), except with respect to attorneys' fees, costs and expenses which are awarded in the total amount of $437,500.00.  The Clerk of Court is directed to dismiss the case with prejudice.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:        January 29, 2021
              Rochester, New York